RECEIVED
AUG 22 2019
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

LAURA LOOMER,
a Natural Person and Citizen of Florida

Plaintiff,

v.

RASHIDA HARBI TLAIB,
born and formerly known as Rashida Harbi
a Natural Person, and citizen of Michigan

Defendant.

**COMPLAINT**

Civil Action No. 19-2322 DSD/TNL

**COMPLAINT**

Plaintiff Laura Loomer, *pro* se, a citizen of Florida, hereby sues Defendant Rashida Harbi Tlaib, a citizen of Michigan and alleges as follows:

## I. INTRODUCTION AND NATURE OF THE ACTION

1. This is a complaint for damages and equitable relief arising out of the assault and battery and violation of religious rights by then federal congressional candidate Rashida Tlaib.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2) because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, and is based on a federal question pursuant to 28 U.S.C. § 1331.

3. Thus, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

SCANNED
AUG 22 2019
U.S. DISTRICT COURT MPLS

4. This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) because the unlawful acts alleged herein took place in this district.

## III. THE PARTIES

6. The Plaintiff Laura Loomer is a natural person who is a citizen of Florida.

7. The Defendant Rashida Tlaib is a natural person who is a citizen of Michigan.

## IV. FACTS COMMON TO ALL COUNTS

8. By the acts alleged herein, the Defendant Rashida Tlaib, committed assault, battery, intentional infliction of emotional distress, and violation of religious rights against the Plaintiff Laura Loomer.

9. Laura Loomer is a Jewish female investigative journalist, both as a devout Jew, and a strong supporter of Israel and its right to exist. She is an investigative journalist reporting on issues, news, and events of concern to Jewish-Americans, terrorism, and other matters of extreme public importance.

10. Originally from Tucson, Arizona, Loomer began her journalism career working as an investigative journalist for Project Veritas from 2015-2017.

11. Loomer's investigative journalism has uncovered fraud and corruption within political campaigns, Islamic extremism on college campuses, flaws and loopholes within the U.S. immigration system, and widespread voter fraud throughout the United States.

12. Rashida Tlaib is a lawyer and got her law degree at Western Michigan University Cooley Law School in 2004.

13. Rashida Tlaib somehow became a member of the Michigan State Bar on

January 25, 2007, being assigned Registration number P70356.[1]

14. Rashida Tlaib as a lawyer knows that she is neither legally permitted to assault or batter Laura Loomer nor violently grab Laura Loomer's property including Loomer's smart phone, which put Plaintiff Loomer in fear of severe physical injury and which did physically accost Ms. Loomer.

15. As a lawyer, Rashida Tlaib also understands the role of a free press under the First Amendment to the U.S. Constitution in covering candidates for public office and their rights to freely inquire of candidates for public office.

16. In 2009, Rashida Tlaib was elected to the Michigan House of Representatives, where she represented Michigan State House District 12 through 2012 and from 2012 through 2015 represented District 6.

17. In August 2014, being barred from running again by term limits, Rashida Tlaib sought the nomination for Michigan State Senate but did not unseat the incumbent Democrat.

18. On August 11, 2018, Rashida Tlaib and Ilhan Omar held a public campaign meeting at the Holy Land Deli, in Minneapolis, Minnesota. [2]

19. On August 11, 2018, Rashida Tlaib assaulted and battered Plaintiff Loomer in the public campaign meeting at the Holy Land Deli, in Minneapolis, Minnesota.

20. In this regard, on August 11, 2018, Rashida Tlaib committed assault and battery against Laura Loomer in the public campaign meeting at the Holy Land Deli, in

---

1 State Bar of Michigan Attorney Search https://www.zeekbeek.com/SBM/Search-Results#fname=Rashida&lname=Tlaib&mtype=good®ion=MI

2 Emma Nelson , "Former Project Veritas staffer crashes Ilhan Omar campaign event in Minneapolis", Star Tribune August 12, 2018, accessible at: http://www.startribune.com/former-project-veritas-staffer-crashes-ilhan-omar-campaign-event-in-minneapolis/490661421/

Minneapolis, Minnesota.

21.     On August 11, 2018, Rashida Tlaib violently grabbed Laura Loomer's smart phone in the public campaign meeting at the Holy Land Deli, in Minneapolis, Minnesota.

22.     The attack was captured on videotape, which is accessible at https://www.youtube.com/watch?v=yWHPgOouQS0

23.     Before the incident, Laura Loomer politely introduced herself to Rashida Tlaib, and then Ilhan Omar quickly ushered Rashida Tlaib away and began to block Loomer's conversation with Rashida Tlaib.

24.     While introducing herself to talk to Rashida Tlaib, as shown on the video, Laura Loomer started out by mentioning that Rashida Tlaib is going to be a Congresswoman (because she had no major party opposition at that time) and *therefore* -- because of her imminent role as a Member of Congress Tlaib's positions on foreign policy issues are important and thus a matter of the public interest.

25.     Therefore, Laura Loomer clearly focused all of her discussion and questions on what as a Congresswoman Rashida Tlaib planned to do as an elected member of Congress.

26.     Laura Loomer confined herself to asking Rashida Tlaib (and no one else) questions about foreign policy issues and issues of fighting terrorism and standing up for the rights of women and Jewish people.

27.     Even if the questions asked might be viewed as direct, that is because these policy issues and foreign policy challenges are in their very nature direct questions which the Congress and a future Congresswoman must address in its official duties.

28.     Laura Loomer's questions were squarely within the tradition of a free press in

seeking answers on issues important in political campaigns.

29. The violent attack by Rashida Tlaib came after Plaintiff Loomer, a well-known Jewish investigative reporter, asked Tlaib about whether or not the terror organization Hamas is in fact a fundamentalist organization that weaponizes terror and violence against Jewish people.

30. Tlaib, who was running as a federal candidate to be a lawmaker, would not give her opinion about a group that the U.S. government has classified as a terrorist organization, and she quickly turned violent.

31. At that time on August 11, 2018, both Rashida Tlaib and Ilhan Omar were candidates for federal office for the U.S. House of Representatives as the nominees of the Democrat Party for their respective districts.

32. At that time on August 11, 2018, Rashida Tlaib was essentially unopposed in her election for Michigan's 13th congressional district for the U.S. House of Representatives.[3]

33. Thus, at the August 11, 2018 campaign event, Rashida Tlaib's positions on foreign policy issues and her plans in Congress were especially newsworthy because Rashida Tlaib -- being unopposed -- was all but certain to be elected to Congress on November 6, 2018.

34. The voters were and are entitled to know the policies, positions, and plans of candidates who would exercise power in Congress if elected.

35. At that time on August 11, 2018, Rashida Tlaib was campaigning in

[3] Rashida Tlaib ultimately won the general election on November 6, 2018, with 84.2% of the vote. Minor candidates Sam Johnson received 11.4% of the vote and D. Etta Wilcoxon won 4.1% of the vote. However, after winning the primary, Tlaib was assured of election to Congress.

Minneapolis, Minnesota for another Muslim and fellow anti-Semitic woman, Ilhan Omar, with regard to her candidacy to the U.S. House of Representatives.

36. At that time on August 11, 2018, both Rashida Tlaib and Ilhan Omar had made their opposition to and disdain of the state of Israel and its Jewish supporters a major part of their respective election campaigns for Congress.

37. Both candidates at that time had the endorsement of the Council on American-Islamic Relations ("CAIR"), which has been designated as a terrorist organization in the United Arab Emirates. In this regard, CAIR was also named in a criminal prosecution brought by the U.S. Department of Justice as an "unindicted co-conspirator" in the Holy Land Foundation terrorist related criminal prosecution in 2008 in the U.S. District Court for the Northern District of Texas. *See United States of America v. Holy land Foundation for Relief and Development et al*, 3:04-cr-240 (N.D. Tx.).

38. On August 9, 2018, Rashida Tlaib made a public statement delivered by the social media platform known as Twitter:

> "We cannot allow foreign aid to be used to violate the human rights of people of any race, nation or ethnicity. I will not fund or standby silently when there is injustice."

39. On August 9, 2018, Rashida Tlaib made a public statement on Twitter:

> "Growing up in Detroit taught me better than to stand by as people's rights are violated. My roots as a Palestinian American are strong and important. I believe every human being deserves to live with dignity. #HumanRightsforAll."

40. Notoriously, Rashida Tlaib made a statement that thinking of the Holocaust and the massacre of 6 million Jews before and during World War II gave her a "calming

feeling," on a podcast called "Skullduggery"[4] in an episode titled "From Rashida with Love."

> "There's always kind of a calming feeling I tell folks when I think of the Holocaust, and the tragedy of the Holocaust, and the fact that it was my ancestors — Palestinians — who lost their land and some lost their lives, their livelihood, their human dignity, their existence in many ways, have been wiped out, and some people's passports."[5]

41. Rashida Tlaib had previously announced her foreign policy plans to end foreign aid to Israel -- officially America's ally -- in support of Palestinians against Israel.

42. Therefore, an investigative journalist such as Plaintiff Loomer would want to interview and question Rashida Tlaib about her plans to push to defund Israel from U.S. foreign aid when she would -- with near certainty -- join Congress in January 2019.

43. Laura Loomer asking Rashida Tlaib about her plans regarding Israel, foreign aid, and the Palestinian political goals as a member of Congress was legitimate news gathering as an investigative journalist.

44. In January 2018, Maher Abdel-qader, a major fundraiser for Rashida Tlaib, publicly shared a video [6] spreading the racist smear that Jews are not Israelites but descended from Khazars, a semi-nomadic tribe from the Asian steppes, implying the Jews have no right to the land of Israel, which Muslims want to acquire. [7]

---

4 https://play.acast.com/s/skullduggery/f32bee95-d750-4e3c-bd36-d700d5f0a11f

5 Philip Klein, " Rashida Tlaib says thinking of the Holocaust provides her a 'calming feeling,' shockingly claims Palestinians created 'safe haven' for Jews", The Washington Examiner, May 12, 2019, accessible at: https://www.washingtonexaminer.com/opinion/rashida-tlaib-says-thinking-of-the-holocaust-provides-her-a-calming-feeling-shockingly-claims-palestinians-created-safe-haven-for-jews

6 Peter Hason, "Rashida Tlaib's Ties To Anti-Semitism Run Deeper Than Previously Known," The Daily Caller, January 28, 2019, accessible at: https://dailycaller.com/2019/01/28/rashida-tlaib-anti-semitism-ties/

7 Of course DNA analysis has conclusively refuted this attack upon the legitimacy of Jews living in the land of Israel today as Slavic pretenders. DNA shows http://forward.com/articles/155742/jews-are-a-race-genes-reveal/?p=all that (1) all Jews who

45. In April 2018, Tlaib presented Abdel-qader with a "medal of appreciation" for his support of her campaign.

46. Tlaib is a member of the Facebook group "Palestinian American Congress," where members often demonize Jews. The group's founder is Palestinian activist Maher Abdel-qader.

47. Abdel-qader helped organize campaign events for Tlaib across the country.[8]

48. The video posted by Tlaib's key fund-raiser Abdel-qader described Jews as "satanic" and questioned whether 6 million Jews actually died in the Holocaust. "Research the truth about the Holocaust, and you'll definitely start to question what you thought you knew," the video's narrator says.

49. Abdel-qader took credit on Facebook for organizing fundraising events for Tlaib among Arab-Americans, pulling in hundreds of thousands of dollars for her campaign.

50. Because Tlaib barely won the Democrat party nomination (at 31.2%) by about a 1% margin over Brenda Jones (30.2%), the support of anti-Semitic Jew-hater Abdel-qader

---

self-identify as Jews show http://www.nytimes.com/2002/05/14/science/in-dna-new-clues-to-jewish-roots.html incredible genetic similarity http://bioanthropology.huji.ac.il/pdf/Nebel_2001b.pdf with each other, no matter where they live, (2) all self-identified Jews are very close genetically http://www.pnas.org/cgi/content/full/97/12/6769 to the people groups in and around Israel, (3) Jews show http://www.nytimes.com/2000/05/09/science/y-chromosome-bears-witness-to-story-of-the-jewish-diaspora.html no genetic similarity to Khazars, (4) all modern Jews share a common genetic ancestor http://www.familytreedna.com/nature97385.html 3,000 to 4,000 years ago – or up to 2,700 years before the Khazars converted to Judaism, and (5) Jews show http://www.nytimes.com/2006/01/14/science/14gene.html?_r=1 are distinct in their DNA from those they live among, rejecting a Slavic or European origin for self-identifying Jews.

[8] Sheryl Gay Stolberg, "From Celebrated to Vilified, House's Muslim Women Absorb Blows Over Israel," The New York Times, February 1, 2019 ("Another, Maher Abdel-qader, who has donated to Ms. Tlaib and organized events for her, shared a blatantly anti-Semitic video on his Facebook page."), accessible at: https://www.nytimes.com/2019/02/01/us/politics/ilhan-omar-rashida-tlaib-israel.html

helped Tlaib become a U.S. Congresswoman. [9]

51. Tlaib raised more money than any of the other candidates seeking the seat in Congress, making the contributions of her key fund-raiser Abdel-qader critical to her election to Congress.

52. Photos Abdel-qader posted on social media show him speaking at Tlaib's campaign events for Congress in 2018.

53. In April 2018, Tlaib posted a picture of herself and Abbas Hamideh on Facebook who is a Palestinian activist and a supporter of Hezbollah who believes Israel shouldn't exist.

54. The Jewish Anti-Defamation League demanded an explanation from Tlaib, who told the Detroit Free Press that she didn't know who Hamideh is, although she posted a photograph of herself with him on her Facebook page.

55. Abbas Hamideh issued a statement on November 19, 2016, on the messaging service known as Twitter saying:

> "Israel does not have a right to exist. The terrorist entity is illegal and has no basis to exist other than a delusional ISIS like ideology."

56. Likewise, anti-Semitic Linda Sarsour who was Co-Chair of the Women's March in January 2017 was an early supporter of Tlaib for Congress.

57. Thus, at the campaign event on August 11, 2018, any responsible journalist doing his or her job should have asked candidate Rashida Tlaib about her anti-Semitic views, the anti-Semites who engineered her election to Congress, and her anti-Israel policies and plans once sworn into Congress.

---

[9] Rashida Tlaib, BALLOTPEDIA, Section "Democratic primary for U.S. House Michigan District 13," https://ballotpedia.org/Rashida_Tlaib

58.    Palestinian-American professor Amer Zahr, a supporter of the anti-Israel

Boycott, Divestment and Sanctions (BDS) movement also appeared at Rashida Tlaib's

campaign events.

59.    After the 2018 election, Zahr posted a Facebook video he recorded from

Tlaib's office to show that he had re-labeled Israel as "Palestine" on a map hanging in

Rashida Tlaib's congressional office.

60.    An article recounting the label change received positive reactions when shared

within the "Palestinian American Congress" group that Tlaib belongs to on Facebook.  One

group member commented: "They will be wiped off the map soon inshallah [God willing]."

61.    Rashida Tlaib, born Rashida Harbi, was born as the eldest of 14 children on

July 24, 1976, in Detroit, Michigan.

62.    Rashida Tlaib's mother was born in Beit Ur El Foka, near the West Bank city

of Ramallah.

63.    Rashida Tlaib's father was born in Beit Hanina, a neighborhood in East

Jerusalem. He moved first to Nicaragua, then to Detroit. On information and belief, he was

not legally eligible to enter the United States as a refugee having established citizenship and

residency in Nicaragua  before coming to the United States.

64.    Defendant Tlaib committed the acts as alleged herein against Plaintiff Loomer

also because Loomer is a supporter of President Donald Trump, who Tlaib has advocated the

impeachment and conviction of, hatefully calling on Congress to impeach and convict the

"mother fucker!" Defendant's Tlaib primary interest in impeaching and convicting President

Trump is because he is a strong supporter of Israel and its right to exist, as well as the fact

that his daughter Ivanka and her husband, the president's son-in-law, Jared Kushner, are both

Jewish. Thus, President Trump is attacked by Defendant Tlaib also because he has Jews in his immediate family.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
***Assault***

65. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

66. The Supreme Court of Minnesota has held that:

> An assault is an unlawful threat to do bodily harm to another with present ability to carry the threat into effect. Mere words or threats alone do not constitute assault. When the words or threats are accompanied by a threat of physical violence under conditions indicating present ability to carry out the threat, they cease to be mere words or threats. *Dahlin v. Fraser*, 206 Minn. 476, 478, 288 N.W. 851, 852 (1939)

67. As shown in the video (which is incorporated herein by reference), in addition to and separate from physically hitting and battering Laura Loomer with her hand, Rashida Tlaib also reached out and grabbed Laura Loomer's smart phone and then violently ripped the phone away from Laura Loomer in an unhinged and violent manner.

68. Laura Loomer was at that very moment very conspicuously and legitimately using her smart phone to video record the event and record her questions and Rashida Tlaib's responses.

69. Defendant placed Plaintiff in apprehension of an imminent harmful or offensive contact and indeed this physical contact was made.

70. Plaintiff was injured in her person by reason of the assault and battery committed by the Defendant. A complaint was filed by Plaintiff Loomer with the police but no action has as yet been taken, undoubtedly for political reasons as the police are fearful of

being vilified by Tlaib and Omar and their agents as Islamaphobic.

MINNEAPOLIS POLICE DEPARTMENT

18-272377 2nd

71. By reason of the wrongful conduct of the Defendant, the Plaintiff suffered emotional distress and the fear of imminent serious bodily injury or death. Ms. Loomer's religious rights were also violated as pled below, since the assault and battery resulted from Defendant Tlaib's anti-Semitism and great hatred of Jews and Israel.

## SECOND CAUSE OF ACTION
### *Battery*

72. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as **is** fully set forth herein.

73. Under Minnesota law, battery is an intentional unpermitted offensive contact with another person. Unlike assault, this requires actual, physical contact with another. Physical or severe emotional harm does not necessarily have to result for a viable claim.

74. The tort of battery is a separate and distinct cause of action from the tort of intentional infliction of emotional distress, and the elements of proof necessary to sustain each claim are entirely different.

a. Once a battery has been proved, compensatory damages may be awarded for humiliation and mental suffering, as well as physical injury. See *Smith*

*v. Hubbard*, 253 Minn. 215, 225, 91 N.W.2d 756, 764 (1958) (allowing compensatory damages for humiliation and mental suffering resulting from a battery).

75. As shown in the video embedded in the news report of the "Next News Network" on YouTube at https://www.youtube.com/watch?v=yWHPgOouQS0, with Ilhan Omar looking on approvingly, Rashida Tlaib physically attacked Laura Loomer.

76. As shown in the video, Rashida Tlaib reached out with her hand and struck Laura Loomer physically.

77. By reason of the wrongful conduct of the Defendant, the Plaintiff suffered conscious pain, suffering, emotional distress and bodily injury and other mental and physical injuries.

**THIRD CAUSE OF ACTION**
***Intentional Infliction of Emotional Distress***

78. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

79. To prove their claim of the independent tort of intentional infliction of emotional distress, appellants must show: (1) extreme and outrageous conduct by defendant; (2) conduct that is intentional or reckless; (3) the conduct that caused emotional distress; and (4) severe emotional distress. Hubbard v. United Press International, Inc., 330 N.W.2d 428, 439 (Minn.1983). *Saltou v. Dependable Ins. Co., Inc.*, 394 N.W.2d 629 (Minn. App., 1986)

80. The Defendant Tlaib, while running as a federal candidate to be a representative in Congress and campaigning for another candidate for U.S. Congress, Ilhan Omar, another anti-Jew and Israel hater, attacked Plaintiff Loomer simply for asking questions about foreign policy and the future Congresswoman's plans in office.

81. The Defendant's actions were intentional.

82. The Defendant intended to cause emotional distress by violently lashing out in anger and stopping Plaintiff Loomer from doing her job as an investigative journalist.

83. The Defendants' acts of promoting actions of violence against Jews and Israel were done with the intent to terrorize, threaten, intimidate, and frighten Jews including the Plaintiff Loomer

84. The Defendants' actions were willful, malicious and deliberate with the likelihood that such behavior would cause severe emotional distress and with utter disregard for the consequences of such actions.

85. Defendant Tlaib's conduct was unreasonable and outrageous and exceeded the bounds usually tolerated by decent society, and was done willfully, maliciously and deliberately, or with reckless indifference, to cause Plaintiff Loomer's mental, physical, emotional pain, distress, and anguish.

86. As a direct, foreseeable and proximate result of the conduct of Defendant as alleged hereinabove, Plaintiff suffered damages in amounts to be proven at trial.

**FOURTH CAUSE OF ACTION**
***Violation of Religious Freedom Restoration Act***

87. Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

88. Under the Religious Freedom Restoration Act, 42 U.S.C. 2000bb-1 "Free Exercise of Religion Protected"

> (a) IN GENERAL
>
> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection

> (b)EXCEPTION
>
> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
>
> (1)is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.
>
> (c)JUDICIAL RELIEF
>
> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

89. On information and belief, as will become even more certain so as a result of discovery, Rashida Tlaib actually agrees with and seeks to further each and every one of the anti-Semitic and hateful slurs and in many instances terrorist funded and related actions against Jews and goals for the destruction of the State of Israel advanced publicly by her close advisors, key fundraisers, and close-knit supporters who made her election to the U.S. Congress possible.

90. On information and belief, Rashida Tlaib was elected to Congress for the very purpose of advancing the anti-Semitic and anti-Israel policies and hateful goals of her key advisors, supporters, fund-raisers, and donors, including their goal of the destruction of the state of Israel and the genocide of the Jewish people.

91. The Plaintiff Rashida Tlaib ran on her platform of attacking the state of Israel, promoting anti-Semitism including the illegitimacy of Jews as the owners and heirs of the historic Kingdom of Israel, including all land illegitimately claimed by so-called Palestinians.

92.     The so-called Anti-Boycott Laws of 1976 and 1977 (really an amendment in 1977 to the Export Administration Act (EAA) and the Ribicoff Amendment to the 1976 Tax Reform Act (TRA)) prohibit the private boycott of the State of Israel in conflict with U.S. foreign policy).[10]

93.     The Logan Act at 18 U.S.C. § 953 prohibits the conduct of an independent foreign policy in conflict with and in contradiction to the foreign policy of the authorized officials of the U.S. Government.

94.     Rashida Tlaib's purpose in running for Congress and serving in Congress is to promote economic warfare and what is in effect economic and other forms of terrorism against Israel by promoting the illegal "Boycott, Sanctions and Divestment" movement in violation of the Anti-Boycott Laws (amendments) of 1976 and 1977, as well as to further other hostile acts against Israel and Jews.

95.     However, when Plaintiff Laura Loomer sought to ask questions of Rashida Tlaib, a federal candidate for office and thus a government official, of her plans in Congress, foreign policy positions, and opposition to Jews and Israel, Rashida Tlaib then violently attacked Laura Loomer and sought to shut down her attempts to gather news and inform the public of Rashida Tlaib's attacks on Israel and Jews.

96.     On information and belief, Rashida Tlaib's intent in trying to shut down news gathering and news reporting of Rashida Tlaib's foreign policy goals and other planned actions when elected to Congress was specifically to carry out the campaign of Tlaib and her key supporters, advisers, and donors to intentionally and knowingly harm Jews such as Plaintiff Loomer and destroy their historic homeland Israel.

---

[10]     Antiboycott Compliance Requirements, Office of Antiboycott Compliance, https://www.bis.doc.gov/index.php/enforcement/oac#boycottlaws

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff Laura Loomer respectfully requests judgment in her favor against the Plaintiff in the amount of $500,000 actual and compensatory damages, and punitive damages in the amount in excess of $2,000,000, plus attorney's fees and costs, and such other relief, legal and equitable, that the jury and this Court may deem appropriate.

Dated: August 22, 2019

Respectfully submitted,

Laura Loomer /LK

LAURA LOOMER

*Of Counsel:*
Larry Klayman, Esq.
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (561)-558-5536
Email: leklayman@gmail.com

Pro Hac Vice to Be Submitted