## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LAURA LOOMER,

              Plaintiff,

v.

RASHIDA HARBI TLAIB,

              Defendant.

Civil No. 0:19-cv-02322-DSD-TNL

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ............................................. 1

III. ARGUMENT ....................................................................................... 3

     A.   Loomer's Religious Freedom Restoration Act Claim Must be
          Dismissed. ............................................................................... 4

          1.   Loomer Cannot Allege a RFRA Claim Against a Candidate
               for Congress. ................................................................... 5

          2.   Loomer Has Failed to Allege Sufficient Facts to Plead a Valid
               RFRA Claim. .................................................................... 5

     B.   Loomer's Intentional Infliction of Emotional Distress Claim Must
          Be Dismissed. ........................................................................... 7

     C.   Loomer's Assault and Battery Claims Should be Dismissed. ................... 9

     D.   If the Court Dismisses the RFRA Claim, It Should Dismiss the
          Remainder of the Case for Lack of Jurisdiction. ............................... 12

IV.  CONCLUSION .................................................................................. 13

## I.      INTRODUCTION

Defendant Rashida Tlaib ("Congresswoman Tlaib" or "Ms. Tlaib") brings this motion to dismiss Plaintiff Laura Loomer's ("Loomer") Complaint in its entirety. Loomer's claim under the Religious Freedom Restoration Act ("RFRA") lacks any basis in law or fact and her Intentional Infliction of Emotional Distress ("IIED") claim relies on conclusory allegations with no factual support, and both must be dismissed.  Loomer's allegations supporting her assault and battery claims mischaracterize her interactions with Ms. Tlaib—as demonstrated in the video of the "incident" incorporated into the Complaint—and similarly fail to state a claim for relief.  Moreover, after the Court dismisses Loomer's RFRA claim, the Court lacks jurisdiction over the remaining claims because Loomer cannot demonstrate that the jurisdictional threshold has been met.  Ms. Tlaib asks this Court to dismiss the case in its entirety.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Ms. Tlaib was a candidate for the United States House of Representatives in Michigan's 13th Congressional District at the time of the alleged incident.  She was elected to the office on November 6, 2018 and seated as a Congresswoman on January 3, 2019.

On August 11, 2018, prior to the general election, Ms. Tlaib visited Minnesota for a campaign event with Ilhan Omar, who was also a candidate for Congress in Minnesota. *See* Compl. ¶ 25.  The event was at the Holy Land Deli in Minneapolis, Minnesota.  A

video taken at the event,[1] which Loomer "incorporates by reference" into her Complaint, first shows Loomer, a self-described "investigative journalist,"[2] approaching Ms. Tlaib for a handshake.  The video shows Ms. Tlaib shaking Loomer's hand, and expressing concern upon noticing that Loomer appeared to be shaking and her hands were cold.

Ms. Tlaib then moved away to proceed with the fundraiser.  The video shows Loomer following Ms. Tlaib and beginning to ask questions about her views on various issues with her phone raised and apparently recording.  Loomer continues to approach Ms. Tlaib with her phone raised, and when Loomer is directly in front of her, Ms. Tlaib reaches out and attempts to move the phone out of the way.  The edited video slows down dramatically and makes clear that Ms. Tlaib's contact with Loomer's phone is brief and that there appears to have been no contact between Ms. Tlaib and Loomer's person.  The video then skips ahead and resumes with Loomer continuing to ask increasingly aggressive

---

[1] The link to the video included in Loomer's Complaint at ¶ 22 appears to have been taken down.   However,   a   copy   of   the   video   is   available   here: https://www.youtube.com/watch?v=Q7yFmSwspFM&feature=youtube.

[2] Loomer describes herself as a journalist.  Compl. ¶ 9.  However, she is notorious for her aggressive "reporting" style.  For example, she was banned from the Conservative Political Action Conference in 2019 after she chased down and heckled reporters.  Andrew Blake, *CPAC pulls activist Laura Loomer's press credentials after she heckled reporters*, The Washington Times, https://www.washingtontimes.com/news/2019/mar/2/laura-loomer-right-wing-activist-surrenders-cpac-m/ (Mar. 2, 2019).  Her tactics and extreme positions, in particular her anti-Muslim rhetoric, have resulted in her being banned from social media sites, such as Twitter, Facebook, and Instagram.  Linda Givetash, *Laura Loomer banned from   Twitter   after   criticizing   Ilhan   Omar*,   NBC   News, https://www.nbcnews.com/tech/security/laura-loomer-banned-twitter-after-criticizing-ilhan-omar-n939256 (Nov. 22, 2018); Andrew Blake, *Facebook sued for billions by Laura Loomer, banned conservative deemed 'dangerous'*, The Washington Times, https://www.washingtontimes.com/news/2019/jul/10/facebook-sued-for-billions-by-laura-loomer-banned-/ (July 10, 2019).

and offensive questions of Ms. Tlaib and Ms. Omar.  This disruptive conduct continues for several minutes before the video ends.

## III.   ARGUMENT

Congresswoman Tlaib brings this motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Quintero Community Ass'n Inc. v. F.D.I.C.*, 792 F.3d 1002, 1009 (8th Cir. 2015).

Although generally a court cannot consider matters outside the pleadings, the "Court may consider some information,—which is not contained within the Complaint—such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings—without transforming the Motion into one for Summary Judgment." *Bigalke v. State of Minn. Dept. of Veterans Affairs*, No. 10-212, 2010 WL 3702597, at *4 (D. Minn. Aug. 10, 2010) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).  In this case, Loomer has incorporated by reference a video of the incident that gives rise to the allegations in the Complaint.  Although the Eighth Circuit has not ruled on this issue, the Seventh Circuit has held that the District Court is within its discretion to resolve a claim on a motion to dismiss by viewing the video, and if the

incorporated video "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

Finally, although a *pro se* plaintiff is usually held to a lesser pleading standard, this standard does not excuse *pro se* complaints from "alleg[ing] sufficient facts to support the claims advanced." *Gerstner v. Sebig, LLC*, 386 F. App'x 573, 575 (8th Cir. 2010). Moreover, even these liberties should not be granted here, as the Complaint is apparently signed by Larry Klayman ("LK"), who is an attorney at Freedom Watch, Inc. in the District of Columbia, and who indicates that he intends to submit a *pro hac vice* in this case but has not done so in the two months since the Complaint was filed.[3]

### A.   <u>Loomer's Religious Freedom Restoration Act Claim Must be Dismissed.</u>

Loomer's RFRA claim wholly fails on its face. First, there can be no RFRA claim for an alleged incident that occurred before Ms. Tlaib was a member of Congress. Second, Loomer fails to plead the basic elements of the claim. Accordingly, Count IV of the Complaint must be dismissed with prejudice.

---

[3] Although Defendant filed a Motion for Entry of Default with the Court on October 11, 2019 (Dkt. 11), with Laura Loomer's name and Mr. Klayman's initials ("LK"), Mr. Klayman has not filed a *pro hac* application, nor has Minnesota Counsel appeared on behalf of Plaintiff. Until Mr. Klayman is admitted *pro hac* in this case, he is not authorized to practice before the Court pursuant to Minnesota Local Rule 83.5. Moreover, if Loomer is representing herself in this case, as she indicates in the first sentence of her Complaint, she must personally sign pleadings pursuant to Federal Rule of Civil Procedure 11(a). Every pleading filed on behalf of Defendant appears to have been signed on Loomer's behalf by Mr. Klayman.

1.  <u>Loomer Cannot Allege a RFRA Claim Against a Candidate for Congress.</u>

RFRA states that the "Government shall not substantially burden a person's exercise of religion," and permits "a person whose religious exercise has been burdened" to assert a "violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(a), (c).

Loomer's RFRA claim cannot stand because the incident at the center of the Complaint occurred before Ms. Tlaib became a member of Congress. In order to prevail on a RFRA claim, the plaintiff must show that the *government* substantially burdened her exercise of her religion. 42 U.S.C. § 2000bb-1(a). "The term 'government' includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity." 42 U.S.C. § 2000bb-2(1). Ms. Tlaib was not an official of the United States at the time of the alleged incident. Loomer's Complaint does not explain how a candidate for Congress falls into the definition of "government," and, unsurprisingly, Defendant can locate no case where RFRA was extended to candidates for public office. Accordingly, Loomer's RFRA claim fails on this threshold issue and must be dismissed.

2.  <u>Loomer Has Failed to Allege Sufficient Facts to Plead a Valid RFRA Claim.</u>

To sustain a RFRA claim, the plaintiff must show that the exercise of her religion has been substantially burdened. "A substantial burden exists when the Government forces a person to act, or refrain from acting, in violation of his or her religious beliefs, by threatening sanctions, punishment, or denial of an important benefit as a consequence for

noncompliance." *New Doe Child #1 v. United States*, 901 F.3d 1015, 1026 (8th Cir. 2018).
The question of whether a burden is substantial is a legal question. *Weir v. Nix*, 114 F.3d
817, 820 (8th Cir. 1997).

Loomer has not even come close to alleging that a burden, let alone a substantial
burden, has been placed on the exercise of her religion.  At most, Loomer argues that, when
then-candidate Tlaib did not answer her questions at the campaign event, Ms. Tlaib
prevented Loomer from gathering news and information.  Compl. ¶¶ 95-96.  The alleged
hindrance of Loomer's "journalistic" endeavors in no way burdened her religious practices.
Indeed, Loomer makes no allegation that she has been forced to act or refrain from acting
in violation of her religious beliefs, or that she has ever been threatened with sanctions,
punishment, or a denial of benefits.

Beyond the allegation that Ms. Tlaib somehow prevented Loomer from gathering
news and information at the campaign event, the remainder of Loomer's allegations in
Count IV of (and throughout) the Complaint contain nothing more than a series of
slanderous and false allegations regarding Congresswoman Tlaib.  *See, e.g.*, Compl. ¶¶ 89-
94.  Viewed most generously, the Complaint expresses Loomer's disagreement with
Congresswoman Tlaib's alleged policy positions and nothing more.

In short, Loomer's allegations come nowhere close to alleging a substantial burden
on her religion.  Because Loomer's allegations cannot form the basis for a RFRA claim,
Count IV of Loomer's Complaint must be dismissed with prejudice.

**B.      Loomer's Intentional Infliction of Emotional Distress Claim Must Be Dismissed.**

A successful claim for intentional infliction of emotional distress must satisfy four factors: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Hubbard v. United Press Int'l Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). Minnesota Courts have "sharply limited" claims of intentional infliction of emotional distress to "cases involving particularly egregious facts" in order to "prevent fictitious and speculative claims." *Id.* at 439.

Loomer's claim falls far short of meeting this standard. The allegations in her Complaint are that Tlaib "intended to cause emotional distress by violently lashing out in anger and stopping Plaintiff Loomer from doing her job as an investigative journalist," and "[t]he Defendants' [sic] acts of promoting actions of violence against Jews and Israel were done with the intent to terrorize, threaten, intimidate, and frighten Jews including the Plaintiff Loomer[.]" Compl. ¶¶ 82-83. At most, the conduct Loomer alleges involves a brief, unpleasant interaction with a candidate for Congress, and an underlying disagreement regarding policy positions allegedly held by that candidate. This does not rise to the level of "extreme" or "outrageous" conduct, and courts has dismissed claims involving far more specific and egregious facts. *See, e.g.*, *Murdock v. LA Fitness Int'l, LLC*, No. 12-975, 2012 WL 5331224, at *4 (D. Minn. 2012) (dismissing claim of plaintiff against employer for humiliation, bullying, making racially offensive statements, and posting demeaning comments on Facebook); *Clemons v. MRCI WorkSource*, No. A13-1994, 2014 WL

2178938, at *3 (Minn. App. May 27, 2014) (dismissing claim where plaintiff alleged routine harassment and ridicule); *cf. Fredin v. Middlecamp*, No. 17-3058, 2018 WL 1838100, at *3 (D. Minn. Apr. 18, 2018) (claim of IIED adequately pled when plaintiff alleged defendant falsely and publicly accused him of rape). These cases demonstrate the very high standard required, even at the dismissal stage, to sustain a claim of intentional infliction of emotional distress under Minnesota law.

Furthermore, even if Loomer had alleged sufficient facts to show extreme and outrageous conduct, the IIED claim still fails because her Complaint contains only bare assertions that Ms. Tlaib's actions actually caused emotional distress. The Minnesota Supreme Court has held that the resulting stress from the offensive conduct must be "so severe that no reasonable person could be expected to endure it." *Hubbard*, 330 N.W.2d at 440 (citing Restatement (Second) of Torts § 46 comment J (1965)). Here, Loomer claims only that she suffered "mental, physical, emotional pain, distress, and anguish." Compl. ¶ 85. Such an unsupported allegation, offering merely "labels and conclusions" is insufficient to state a claim. *See Bubble Pony, Inc. v. Facepunch Studios Ltd.*, No. 15-601, 2015 WL 8082708, at *4 (D. Minn. Dec. 7, 2015) (dismissing IIED claim on a motion to dismiss when plaintiff alleged "severe mental and emotional distress"); *Okereke v. Educational Credit Management Corp.*, Civ. No. 12-cv-1802, 2013 WL 3455584, at *4 (D. Minn. July 9, 2013) (dismissing IIED claim when plaintiff claimed "immeasurable emotional imbalance); *Besett v. Wadena Cnty.*, No. 10-934, 2010 WL 5439720, at *17 (D. Minn. Dec. 7, 2010) (citing cases in which IIED claims were dismissed and finding that allegations of "reoccurring headaches, night sweats, insomnia, illness, and physical pain"

insufficient to state claim). Because Loomer has not alleged the requisite level of emotional distress, her IIED claim must be dismissed.

### C.  Loomer's Assault and Battery Claims Should be Dismissed.

Under Minnesota law, "an assault is an unlawful threat to do bodily harm to another with present ability to carry the threat into effect." *Dahlin v. Fraser*, 288 N.W. 851, 852 (Minn. 1939). "Battery is an intentional, unpermitted offensive contact with another." *Johnson v. Morris*, 453 N.W.2d 31, 40 (Minn. 1990). Because Loomer alleges an actual physical contact, and because that contact serves as the basis for both Loomer's assault and battery claims, Defendant focuses its response on the battery claim.

Battery generally requires intentional contact which is offensive or harmful. Here, Loomer does not allege that the contact was harmful. Although she adorns her allegations with words such as "violent" and "unhinged," Loomer has not actually pleaded that she sustained any injury nor that she sought treatment for any injury. *See MacNeil Envtl., Inc. v. Allmon*, No. C4-01-1733, 2002 WL 767754, at *2 (Minn. App. Apr. 30, 2002) (noting plaintiff did not seek treatment for injury). Loomer also does not directly plead that the contact was offensive, although that may be implied from her pleadings. However, the Court need not take Loomer's "unsubstantiated, subjective assertion that a contact was offensive" at face value. *See id.* "An offensive contact must be one which would offend the ordinary person and as such one not unduly sensitive as to his personal dignity. It must, therefore, be a contact which is unwarranted by the social usages prevalent at the time and place at which it is inflicted." *Id.* at *3 (quoting Restatement (Second) of Torts § 19 cmt. a (1965)).

Here, there are two alleged contacts between Ms. Tlaib and Loomer shown in the video. The first is the handshake between the two women. It does not appear that Loomer is alleging that the handshake constituted a battery. The second contact was when Ms. Tlaib attempted to move the phone away from her line of sight while Loomer was questioning Ms. Tlaib. Beyond the brief contact with the phone, the video does not show any direct contact between Ms. Tlaib and Loomer's person.

Even viewing the Complaint in the light most favorable to Loomer, this brief contact does not rise to the level of battery. While civil battery cases not involving police officers are few and far between, the alleged incident is similar to a case in North Dakota, *Wishnatsky v. Huey*, 584 N.W.2d 859 (N.D. App. 1998). In that case, the plaintiff, without knocking, attempted to enter an office where two others were having a conversation. *Id.* at 860. The defendant, according to the plaintiff, "threw his body weight against the door and forced [plaintiff] out into the hall" while yelling at the plaintiff to "get out of here." *Id.* at 861. The district court found, and the court of appeals affirmed, that while the defendant had acted rudely and abruptly, his conduct did not rise to the level of battery. *Id.* at 862. The court found that pushing the door closed on the plaintiff resulted in contact that was "momentary, indirect, and incidental" and would not be offensive to an ordinary person who had intruded upon a private conversation by pushing open a door. *Id.* The present case is analogous because, like the individual intruding into an office without invitation, Loomer here is shown in the video to be asking aggressive questions, disrupting the campaign event, and deliberately pursuing Ms. Tlaib with her phone raised. Ms. Tlaib, acting reasonably in the face of such an intrusion, reached out to move the phone away

10

from her line of sight.   Like in *Wishnatsky*, the contact was "momentary, indirect, and incidental."   And, although Loomer asserts that Ms. Tlaib appeared or acted "violent" or "unhinged," this is contradicted by the video, which clearly shows that Ms. Tlaib was not acting out of anger or even apparent annoyance.   *See Bogie*, 705 F.3d at 609 (holding an exhibit may control if it contradicts the allegations in the Complaint).   Indeed, the video demonstrates that Loomer was the aggressor and seemingly trying to provoke a reaction from Ms. Tlaib both before and after the alleged incident.   The circumstances here make the contact even less offensive than the contact in *Wishnatsky*, where the defendant pushed the door shut on the plaintiff and proceeded to yell at him afterward.   584 N.W.2d at 861-62.   Therefore, under these circumstances, the Court may conclude as a matter of law that the contact between Ms. Tlaib and Loomer does not rise to the level of battery, and Loomer's battery claim should be dismissed.

With respect to Loomer's assault claim, beyond the contact with the phone, the video of the incident simply does not show any other action by Ms. Tlaib that could be interpreted as threatening physical violence.   Again, the contact between Ms. Tlaib and Loomer was brief, and it appears the two women separated immediately afterward.   Ms. Tlaib does not exhibit any anger, or use violent language, or make any threatening motions or gestures.   *Cf. Dahlin*, 288 N.W. at 852-53.   Although Loomer continued to shout questions to Ms. Tlaib, no further interactions between the two can be seen, nor does Loomer allege that any other contact or interaction occurred.   Because Loomer has not plausibly pled any action that constitutes a threat of physical violence, let alone one corroborated by the video of the event, her assault claim must also be dismissed.

11

**D.**    **If the Court Dismisses the RFRA Claim, It Should Dismiss the Remainder of the Case for Lack of Jurisdiction.**

Even if the Court finds that fact issues preclude dismissal of some or all of the state law claims, if the Court dismisses the RFRA claim, then it must dismiss the whole complaint for lack of subject matter jurisdiction, because Loomer cannot meet the amount in controversy required for diversity jurisdiction.  Subject matter jurisdiction is a threshold requirement that must be assured in every federal case.  *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991).  Federal district courts have subject matter jurisdiction over civil actions that involve a federal question or diversity of citizenship.  28 U.S.C. §§ 1331, 1332.  Diversity jurisdiction exists when the case is between citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).

"A complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount."  *Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002) (quotation marks omitted).  "If the defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence."  *Id.*

Here, although Loomer has alleged damages of over $2.5 million, her claims are worth a nominal value, at most.  As discussed above, Loomer's IIED claim is without merit, but regardless, this Court has held that conclusory allegations of emotional distress are insufficient to establish the jurisdictional amount.  *Kedrowski v. Lycoming Engines*, No. 15-19, 2015 WL 2165798, at *4 (D. Minn. May 11, 2015).

12

As for the assault and battery claims, an award of damages for personal injuries generally includes consideration of pain and suffering, medical expenses, and present or future lost earning capacity. *See Busch v. Busch Const., Inc.*, 262 N.W.2d 377, 397-98 (Minn. 1977). Here, even if Loomer had stated claims of assault and battery, she has not pleaded any actual physical or bodily harm, nor that she sought or received medical treatment, or suffered any other injury. Any claims of emotional or mental distress tied to the alleged assault and battery are also conclusory and unsupported. Thus, even if a battery or assault occurred, Loomer failed to allege facts sufficient to establish by a preponderance of the evidence that her claim exceeds the jurisdictional threshold, and the Court should dismiss the case for lack of subject matter jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint for failure to state a claim, or, if the Court dismisses the RFRA claim, it should dismiss the remainder of the Complaint for lack of subject matter jurisdiction.

Dated:  October 31, 2019                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.


                                            s/Charles N. Nauen
                                            Charles N. Nauen (#121216)
                                            David J. Zoll (#0330681)
                                            Rachel A. Kitze Collins (#0396555)
                                            100 Washington Avenue South, Suite 2200
                                            Minneapolis, MN 55401-2159
                                            (612) 339-6900
                                            cnnauen@locklaw.com
                                            djzoll@locklaw.com
                                            rakitzecollins@locklaw.com

                                            **ATTORNEYS FOR DEFENDANT
                                            RASHIDA TLAIB**