RECEIVED
NOV 25 2019
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| LAURA LOOMER<br><br>　　　　Plaintiff,<br>v.<br><br>RASHIDA HARBI TLAIB<br><br>　　　　Defendants. | Case No: 19-cv-2322 |

## PLAINTIFF'S OPPOSITION TO MOTION TO DISISS

Plaintiff Laura Loomer ("Loomer") submits the following in opposition to Defendant Rashida Harbi Tlaib's ("Defendant Tlaib") Motion to Dismiss.

**Dated**: November 20, 2019

Respectfully submitted,

_[signature]_
LAURA LOOMER

*Of Counsel:*
Larry Klayman, Esq.
Freedom Watch, Inc.
2020 Pennsylvania Ave NW # 345
Washington, DC, 20006
Tel: 561-558-5536
Email: leklayman@gmail.com

Pro Hac Vice to Be Submitted

SCANNED
NOV 25 2019
U.S. DISTRICT COURT MPLS

# **TABLE OF CONTENTS**

STANDARD OF REVIEW .................................................................................................2
LEGAL ARGUMENT......................................................................................................2
   Battery and Assault..................................................................................................2
   Religious Freedom Restoration Act.........................................................................5
   Intentional Infliction of Emotional Distress ...........................................................6
CONCLUSION.................................................................................................................7

## **MEMORANDUM OF LAW**

The actual facts in this Complaint are quite simple, despite Defendant Tlaib's improper attempts to try to "sneak" in additional "facts" to try to justify her actions. Plaintiff Loomer attended a public campaign event at the Holy Land Deli on August 11, 2018. Comp. ¶ 18. Plaintiff Loomer was within her rights to attend the event, and Defendant Tlaib makes no argument to the contrary, nor could she. While at the event, Plaintiff Loomer, as an investigative journalist, politely introduced herself to Defendant Tlaib, Comp. ¶ 23, before beginning to ask Defendant Tlaib questions regarding her positions on foreign policy and other issues. Comp. ¶ 24. Plaintiff Loomer's questions were all focused on what Defendant Tlaib planned to do as an elected member of Congress, especially since she had no major party opposition at the time and therefore would certainly be elected. Comp. ¶ 24 – 25. Again, Plaintiff Loomer was within her First Amendment and other rights to try to ask Defendant Tlaib questions pertaining to her policy positions. Defendant Tlaib makes no argument to the contrary, nor could she.

It would appear that Plaintiff Loomer's questions were not of the variety that she wanted to answer, given Defendant Tlaib's reputation of disdain for the state of Israel and its Jewish supporters. Comp. ¶ 36. Indeed, Defendant Tlaib had publicly stated that the Holocaust, which saw the massacre of 6 million Jews, gave her a "calming feeling." Comp. ¶ 40. While Defendant Tlaib would have been well within her rights to simply ignore Plaintiff Loomer and choose to not answer Plaintiff Loomer's questions, that is not what she chose to do. Instead, Defendant Tlaib chose to "physically strike" Plaintiff Loomer, Comp. ¶ 76, as well as violently grab Plaintiff Loomer's mobile phone and try to twist it and pull it away from her. Comp. ¶ 22. Unfortunately for Defendant Tlaib, this incident was caught on camera, so she has no way to run from her actions.

1

Instead, Defendant Tlaib is trying to minimize the clearly offensive contact that she made, while trying to also pin the blame on Plaintiff Loomer as the aggressor. However, that is not what the video shows, nor what is alleged in the Complaint. Indeed, Plaintiff Loomer simply asked questions. It is Defendant Tlaib who chose to have a violent reaction by initiating contact, and now she must suffer the consequences.

## STANDARD OF REVIEW

A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). As such, a motion to dismiss at this stage must be decided solely on what Plaintiff Loomer has pled in their Complaint, taken as true, and not upon any factual "contradictions" that Defendant Tlaib has attempted to insert.

## LEGAL ARGUMENT

### I. Battery and Assault

"A battery is defined as an intentional unpermitted offensive contact with another." *Paradise v. Minneapolis*, 297 N.W.2d 152, 155 (Minn. 1980). Importantly, the offensive contact involved in a battery need not be lengthy, nor cause the victim any physical harm. For example, in *Johnson v. Ramsey Cty.*, 424 N.W.2d 800 (Minn. Ct. App. 1988), the Minnesota Court of Appeals upheld a jury verdict from the lower court awarding $375,000 in total damages upon a finding that a battery had occurred. *Id.* at 801. Crucially, "[t]he jury found Miera liable for battery based on the unequivocal evidence that Miera kissed Johnson." *Id.* at 804. Upon a finding that a battery had occurred, the jury properly awarded damages for the victim's (Johnson) for humiliation and mental suffering. *Id.*

2

Here, the offensive contact alleged far exceeds *Johnson*, which was based on a sole, albeit, unwelcomed kiss. In the instant matter, Plaintiff Loomer "politely introduced herself" to Defendant Tlaib at a campaign event at Holy Land Deli. Comp.¶ 23. Then, in an exercise of her First Amendment rights, as a investigative journalist, Plaintiff Loomer asked Defendant Tlaib policy questions while recording her responses on her mobile phone. While some of the questions asked by Plaintiff Loomer may have been challenging, or even controversial, Plaintiff Loomer still had a right to under the First Amendment to ask those questions, just as Defendant Tlaib had a right to simply ignore them if she did not feel like answering them. That, however, is not what Defendant Tlaib chose to do. Instead, Defendant Tlaib, in response to Plaintiff Loomer's questions, "violently grabbed Laura Loomer's smart phone in the public campaign meeting at the Holy Land Deli...." Comp. ¶ 21. In the video, recording of the incident, which is incorporated by reference, Comp. ¶ 22, Defendant Tlaib is then shown to twist and pull Plaintiff Loomer towards her by pulling on her mobile phone, in an apparent effort to forcefully take Plaintiff Loomer's phone from her. Even more, "[a]s shown in in the video, [Defendant] Tlaib reached out her with hand and struck Laura Loomer physically." Comp. ¶ 76.

This level of offensive contact, at a minimum, rises to the level set forth in *Johnson*, which was a brief unwelcomed kiss. In both instances, neither victim suffered any severe physical injury. Both interactions were relatively brief. However, whereas as kiss, if welcomed by the recipient, is an inherently pleasant experience, snatching and wrestling another individual's mobile phone away from them while physically striking them is always offensive. Thus, put simply, if the offensive contact in *Johnson* constituted battery – and it did, as upheld by the Minnesota Court of Appeals – then Defendant Tlaib's certainly does as well.

3

Likely recognizing this, Defendant Tlaib's strategy appears to be to try to shift the blame onto Plaintiff Loomer, by reaching outside of the Complaint to try to paint Plaintiff Loomer as the "aggressor." However, what the video unequivocally shows is that Plaintiff Loomer never made any physical contact with Defendant Tlaib, and that it was Defendant Tlaib who decided to initiate the offensive contact by grabbing Plaintiff Loomer's phone and pulling it towards herself and physically striking her. The mere fact that Plaintiff Loomer was following her and asking questions, as reporters tend to do, does not give Defendant Tlaib the right to violently snatch her mobile phone.

Indeed, Defendant Tlaib's argument in this regard is so weak that the only case cited by her is a non-controlling North Dakota case, which facts are completely different from the instant matter. If the Court wishes to consider persuasive authority outside of *Johnson*, *Watson v. United States*, 979 A.2d 1254 (D.C. 2009) is far more analogous. In *Watson*, the District of Columbia Court of Appeals was faced with a case that involved a man who, during the course of an argument with his wife, grabbed her phone as she was about to make a call and subsequently ended up breaking the phone. *Id.* at 1255. The court found that this simple act was sufficient to uphold a conviction. As reasoned by the Court, "The legal proposition upon which the trial court relied in *Mahaise* was that the act of grabbing a telephone out of someone's hand during a confrontation is sufficient by itself to establish a *prima facie* case of assault because it is also a battery." *Id.* at 1256-57. This is almost identical to what happened in the instant matter. Thus, Defendant Tlaib's motion to dismiss Plaintiff Loomer's claim for battery must be denied.

Lastly, "an assault is an unlawful threat to do bodily harm to another with the present ability to carry the threat into effect." *Dahlin v. Fraser*, 206 Minn. 476, 478 (1939). As pled in the Complaint, when Defendant Tlaib "reached out and grabbed Laura Loomer's smart phone

4

and then violently ripped the phone away from Laura Loomer in an unhinged and violent manner," Plaintiff Loomer was placed "in apprehension of an imminent harmful or offensive contact." Comp, ¶¶ 67-69. Given the close proximity of Defendant Tlaib to Plaintiff Loomer, it is clear that she had the present ability to carry out bodily harm to Plaintiff Loomer. This is shown in the incorporated video. Comp. ¶ 22. Thus, Defendant Tlaib's motion to dismiss Plaintiff Loomer's claim for assault must also be denied.

## II.     Religious Freedom Restoration Act

Defendant Tlaib argues that Plaintiff Loomer's claim under the Religious Freedom Restoration Act ("RFRA") must be denied because Defendant Tlaib was, at the time, not a member of the government. However, on the date of the incident, August 11, 2018, Defendant Tlaib was "essentially unopposed in her election for Michigan's 13th congressional district for the U.S. House of Representatives." Comp. ¶ 32. Defendant Tlaib was also, at the time, a former member of the Michigan House of Representatives between 2009-2015. This would have made her a *de facto* member of the government at the time.

Even more, as a political candidate, once registered and raising money to run for a public federal officer, Defendant Tlaib was doing so under to color of federal law and is therefore subject to the Federal Election Campaign Act at its regulations.[1] *See* 52 U.S.C. § 30101 et seq. Thus, she was a federal official at the time.

Lastly, it is clear that Defendant Tlaib's conduct did, in fact, place a substantial burden on Plaintiff Loomer's exercise of religion. As set forth in the Complaint, Plaintiff Loomer is a "Jewish female investigative journalist, both as a devout Jew, and strong supporter of Israel and its right to exist. She is an investigative journalist reporting on issues, news, and events of

---

[1] https://www.fec.gov/help-candidates-and-committees/candidate-taking-receipts/contribution-limits/

5

concern to Jewish-Americans, terrorism, and other matters of extreme public importance." Comp. ¶ 9. Conversely:

> Rashida Tlaib actually agrees with and seeks to further each and every one of the anti-Semitic and hateful slurs and in many instances terrorist funded and related actions against Jews and goals for the destruction of the State of Israel advanced publicly by her close advisors, key fundraisers, and close-knit supporters who made her election to the U.S. Congress possible. Comp. ¶ 89.

Furthermore:

> Rashida Tlaib ran on her platform of attacking the state of Israel, promoting anti-Semitism including the illegitimacy of Jews as the owners and heirs of the historic Kingdom of Israel, including all land illegitimately claimed by so-called Palestinians. Comp. ¶ 91.

Then, when "Plaintiff Loomer sought to ask questions of [Defendant] Tlaib…of her plans in Congress, foreign policy positions, and opposition to Jews and Israel, [Defendant Tlaib then violently attacked Laura Loomer and sought to shut down her attempts to gather news and inform the public of Rashida Tlaib's attacks on Israel and Jews." Comp. ¶ 95.

Plaintiff Loomer's work as an investigative journalist is inextricably tied to her Jewish faith, which is why she was asking Defendant Tlaib questions about Jews and Israel at the time that she was attacked. The fact that she was stopped from investigating and asking questions is tantamount to a finding that her right to carry out her Jewish faith was also burdened, as the two are inseparable. Tellingly, it is specifically the issue of Defendant Tlaib's viewpoints on Israel and Jewish persons that caused her to react violently. Thus, Defendant Tlaib's motion to dismiss under the RFRA must be denied as well.

### III. Intentional Infliction of Emotional Distress

"This court, in adopting this cause of action, stated that four elements must be proved in a claim for intentional or reckless infliction of emotional distress. These are: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must

6

cause emotional distress; and (4) the distress must be severe." *Dornfeld v. Oberg*, 503 N.W.2d 115, 117 (Minn. 1993).

Here, the Complaint alleges that the conduct of Defendant Tlaib was intentional. Comp. ¶ 81. Indeed, a quick reading of the facts can support no other conclusion. The Complaint also pleads that, as a result of Defendant Tlaib's intentional actions, Plaintiff Loomer suffered severe emotional distress. Comp. ¶¶ 82-85. Lastly, it is clear that Defendant Tlaib's conduct was extreme and outrageous. Indeed, one's First Amendment constitutional rights are sacrosanct, which protects both Plaintiff Loomer's right to exercise her Jewish faith, as well as perform her job as an investigative journalist. Defendant Tlaib's intentional actions, done in the interest of "promoting actions of violence against Jews and Israel…with the intent to terrorize, threaten, intimidate, and frighten Jews including the Plaintiff Loomer," were carefully calculated to intentionally deprive Plaintiff Loomer of those rights. Thus, Defendant Tlaib's motion to dismiss Plaintiff Loomer's claim for Intentional Infliction of Emotional Distress must be denied.

## CONCLUSION

Based on the foregoing, Plaintiff Loomer respectfully requests that Defendant Tlaib's motion to dismiss be denied and this case proceed forthwith to discovery.

**Dated**: November 20, 2019                    Respectfully submitted,

                                                 /s/ Laura Loomer
                                                 LAURA LOOMER

                                                 *Of Counsel:*
                                                 Larry Klayman, Esq.
                                                 Freedom Watch, Inc.
                                                 2020 Pennsylvania Ave NW # 345
                                                 Washington, DC, 20006
                                                 Tel: 561-558-5536
                                                 Email: leklayman@gmail.com

7